# UNITED STATES DISTRICT COURT

for the

## Eastern District of Kentucky

Lexington Division

| | | | |
|---|---|---|---|
| John Wilson | ) | | |
|     *Plaintiff* | ) | | |
| | ) | | |
| v. | ) | Case No. | 5:12-cv-66-JMH |
| | ) | | |
| Asset Acceptance, LLC | ) | | |
|     *Defendant* | ) | | |
| | ) | | |

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

### I.  Introduction

Plaintiff, John Wilson, objects to Defendant's, Asset Acceptance, LLC's ("AAL"), motion to dismiss. In its motion, AAL mischaracterizes Mr. Wilson's cause of action as being based solely on the question of whether the Lincoln District Court had personal jurisdiction over Mr. Wilson's out-of-state employer or his out-of-state bank. But as shown below, personal jurisdiction is not determinative of Mr. Wilson's claims. These claims allege that AAL violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect a debt by an act that cannot be legally taken and by attempting to collect an amount not permitted by law.

Rather than turning on the question of personal jurisdiction, Mr. Wilson's claims turn on the question of whether the Lincoln District Court had jurisdiction over the res or funds that AAL unsuccessfully attempted to garnish. Because the Lincoln District Court lacked jurisdiction over the out-of-state funds, AAL could not legally garnish the out-of-state funds, and AAL was not permitted by law to take any of these funds.

## II.   Standard of Review

> Upon a motion to dismiss for failure to state a claim
> pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe
> the complaint in a light most favorable to the plaintiff,
> accept all the factual allegations as true, and determine
> whether the plaintiff undoubtedly can prove no set of facts
> in support of its claim that would entitle it to relief. *Sistrunk
> v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996),
> *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2409, 138 L.Ed.2d
> 175 (1997). A judge may not grant a Fed.R.Civ.P. 12(b)(6)
> motion based on a disbelief of a complaint's factual
> allegations. *Wright v. MetroHealth Medical Center,* 58
> F.3d 1130, 1138 (6th Cir.1995), *cert. denied,* 516 U.S.
> 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996). A
> Fed.R.Civ.P. 12(b)(6) motion tests whether the plaintiff has
> stated a claim for which the law provides relief. *Gazette v.
> City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994).

*Edwards v. U.S., Dept. of Energy*, 371 F. Supp. 2d 859, 861 (W.D. Ky. 2005) *aff'd sub*

*nom. Edwards v. U.S. Dept. of Energy*, 200 F. App'x 382 (6th Cir. 2006)

## III.   The Fair Debt Collection Practices Act

The purpose of the Fair Debt Collection Practices Act ("FDCPA") is "to eliminate

abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed

to protect consumers from unscrupulous collectors, whether or not there is a valid debt.

*Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly

prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses

or abuses any debtor; and any false, deceptive or misleading statements, in connection

with the collection of a debt. *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). The Act

"limits 'debt' to consumer debt, *i.e.,* debts 'arising out of . . . transaction[s]' that 'are

primarily for personal, family, or household purposes.'" *Id.* at 293 (quoting 15 U.S.C. §

1692a(5). 15 U.S.C. §§ 1692d, 1692e, and 1692f and requires the debt collector to

provide the consumer with his or her rights, 15 U.S.C. § 1692g, under the Act.

**Because "the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff."** *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990) (Emphasis added). *See also Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178-179 (W.D.N.Y. 1988). This means "that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). Moreover, "[b]ecause the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d at 33. *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 62; *Clomon v. Jackson*, 988 F.2d at 1318. Furthermore, the question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant to the FDCPA. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

Finally, Mr. Wilson's FDCPA claims include a claim for violation of 15 U.S.C.A. § 1692e(5), which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." "§ 1692e(5) covers completed illegal acts as well as the threats to commit those acts." *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 136

-3-

(D. Mass. 2007) (citing *Poirier v. Alco Collections, Inc.,* 107 F.3d 347, 350-51 (5th

Cir.1997); *accord*

- *Marchant v. U.S. Collections West, Inc.,* 12 F.Supp.2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority . . . would defy the very purposes of the section.");

- *Foster v. D.B.S. Collection Agency,* 463 F.Supp.2d 783, 803 (S.D.Oh.2006); ("when a collection agency engages in the unauthorized practice of law [by filing suit in violation of state law], it constitutes an 'action that cannot legally be taken' within the meaning of the FDCPA.");

- *Sprinkle v. SB & C Ltd.,* 472 F.Supp.2d 1235, 1247 (W.D.Wash.2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so. . . . The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it.")

- *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (Debt collection company's filing of state court lawsuits against debtors, without first obtaining necessary license under Maryland Collection Agency Licensing Act violated the FDCPA)

With the above understanding of the FDCPA, we can now turn to the merits of

Mr. Wilson's objection to AAL's motion to dismiss.

## IV.    Relevant Facts

AAL filed suit against Mr. Wilson on April 26, 2007 in Lincoln District Court. In

response, Mr. Wilson timely sent a letter to AAL, which was filed with the Court and was

treated as an Answer. Complaint, dkt. # 1. In the letter, Mr. Wilson denied any liability

and further noted that he had successfully disputed this same debt with Equifax. *Id.*

AAL moved for default judgment on September 6, 2007. *Id.* The trial court denied

the motion because an Answer had been filed in the case. *Id.* Nearly two years later, AAL

-4-

moved for summary judgment. *Id.* Unfortunately, Mr. Wilson did not defend and judgment was entered against him on March 23, 2009. *Id.*

On December 27 2011, AAL served a wage garnishment on Mr. Wilson's employer, Central Oregon Truck Co., Inc., 422 NW Beaver, P.O. Box 1169, Prineville, OR 97754. *Id.* (A copy of the wage garnishment is attached as an Exhibit to the Complaint.). Central Oregon Truck Co., Inc. correctly refused to honor the garnishment because the employer is located out of state and his paycheck is deposited in ING Bank, FSB. ("ING"). *Id.* ING Is a Delaware bank. *Id.*

On February 2, 2012, AAL served a non-wage garnishment on ING. *Id.* (A copy of the non-wage garnishment is attached as an Exhibit to the Complaint.). Mr. Wilson filed a timely challenge to the wage garnishment and moved to quash the non-wage garnishment. *Id.* (A copy of the motion to quash is attached as an Exhibit to the Complaint.). *Id.*  On February 9, 2012, ING filed an Affidavit and Answer to the non-wage garnishment. *Id.* (A copy of the ING Affidavit and Answer is attached as an Exhibit to the Complaint.).

ING did not forward any money to AAL. *Id.* Instead, it filed the following defenses to the non-wage garnishment:

### DEFENSES

1.     The Writ of Garnishment fails due to a lack of in rem jurisdiction over account maintained by ING, in the name of the Judgment Debtor in Wilmington, Delaware.

2.     The Writ of Garnishment fails because Delaware law prohibits garnishment of bank accounts located in Delaware under 10 Del. C. § 3502(b).

*Id.*

Rather than risking on order quashing the garnishments, AAL filed a release of

the non-wage garnishment on February 22, 2012. *Id.* The trial court entered the release.

*Id.* (A copy of the garnishment release order is attached as an Exhibit to the Complaint).

## V.    Mr. Wilson's Claims for Relief

The Complaint brings two claims for relief under the FDCPA. As to the parties,

the Complaint alleges that Asset Acceptance, LLC is a "debt collector" within the

meaning of the FDCPA and that Mr. Wilson a "consumer" within the meaning of the

FDCPA. AAL has not challenged either of these allegations in its motion to dismiss.

Turning to the substance of Mr. Wilson's FDCPA claims, the Complaint alleges that

AAL violated the 15 U.S.C. § 1692e(5) and 15 U.S.C. § 1692f(1) of the FDCPA. In

particular, the Complaint alleged that AAL's failed attempt to garnish Mr. Wilson's out-

of-state wages and funds held in his out-of-state bank constitute the taking an action that

cannot be legally taken and that is not permitted by law in violation of the Act.

### A.    The First Claim for Relief

15 U.S.C.A. § 1692e(5) provides that

> [a] debt collector may not use any false, deceptive, or
> misleading representation or means in connection with the
> collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a
> violation of this section . . . . The threat to take any action
> that cannot legally be taken or that is not intended to be
> taken.

Mr. Wilson's claim under § 1692e(5) is that AAL attempted to collect a debt

when it issued a non-wage garnishment against his out-of-state bank account. But this

action could not be legally taken because the Lincoln District Court lacked jurisdiction

over the funds held in the out-of-state bank. So the court could not legally enforce the

non-wage garnishment.

### B. The Second Claim for Relief

15 U.S.C. § 1692f(1) provides that

> A debt collector may not use unfair or unconscionable
> means to collect or attempt to collect any debt. Without
> limiting the general application of the foregoing, the
> following conduct is a violation of this section . . . . The
> collection of any amount (including any interest, fee,
> charge, or expense incidental to the principal obligation)
> unless such amount is expressly authorized by the
> agreement creating the debt or permitted by law.

Mr. Wilson's claim under § 1692f(1) is that AAL attempted to collect a debt

when it issued a non-wage garnishment against his out-of-state bank account. But

collection of any amount from his ING bank account was not permitted by law because

the Lincoln District Court lacked jurisdiction over the funds held in the out-of-state bank.

So the non-wage garnishment was not permitted by law.

### C. AAL's Mischaracterization of Mr. Wilson's Claims as Turning on Personal Jurisdiction

In its motion to dismiss, AAL misconstrues Mr. Wilson's FDCPA claims as

turning on whether the Lincoln District Court had personal jurisdiction over ING and Mr.

Wilson's employer. This is incorrect. Rather, Mr. Wilson's claims turn on the question of

whether the Lincoln District Court had jurisdiction over the res, *i.e.* the funds in Mr.

Wilson's bank account and his wages. Because it did not have jurisdiction over the res,

AAL's garnishments constitute taking an action to collect a debt that cannot be legally

taken and an attempt to collect an amount not permitted by law in violation of the

FDCPA.

**D.     In Order to Legally Enforce the Garnishments, the Lincoln District Court had to have Jurisdiction over the Res**

As explained in *Corpus Juris Secundum*:

> The court must acquire jurisdiction over the property or debt to be garnished.
>
> Although a court may have jurisdiction of the parties in the main action, it must also acquire jurisdiction over the property or debt to be garnished, to render a judgment against it. Jurisdiction over the garnishment res may neither be waived nor conferred by consent.

38 C.J.S. *Garnishment* § 146 (citing cases from Alabama, Arizona, Illinois, Maryland,

Massachusetts, Michigan, Missouri, New York, and South Carolina).

> American Jurisprudence Second is fully in accord:
>
> [i]t is a fundamental rule that in . . . garnishment proceedings **the res must be within the jurisdiction of the court issuing the process. *Property outside the state cannot be attached or garnished.*** Since fundamentally garnishment proceedings seek to compel the appearance of the defendant by the seizure of the res, the court issuing the attachment must have jurisdiction over the res

6 Am. Jur. 2d *Attachment and Garnishment* § 23 (emphasis added) (citing cases from

Alabama, California, Minnesota, and New York).

The general rule stated above is consistent with rule stated in Restatement

(Second) of Conflict of Laws § 67, which provides:

> A state has power to exercise judicial jurisdiction to apply to the satisfaction of a claim a chattel belonging to the person against whom the claim is asserted, but which is in the possession or control of another person, if

-8-

> (a) the other person is subject to the judicial jurisdiction of the state, and
>
> (b) the chattel to be applied is within the state.

The Restatement's position on this issue is important because "in multi-state matters, Kentucky traditionally follows the Restatement (Second) of Conflict of Laws (1988)." *Major v. Commonwealth*, 275 S.W.3d 706, 714 (Ky. 2009). So the Restatement has particular weight in this case. And to be clear, § 67 of the Restatement (Second) of Conflict of Laws applies in this situation.

In a very similar case, the Arizona Court of Appeals recently relied on the § 67 to "hold that an Arizona court does not have jurisdiction to issue a writ of garnishment to attach a bank account in an out-of-state branch of an interstate bank which does business in Arizona." *Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co., N.A.*, 958 P.2d 457, 457 (Ariz. Ct. App. 1998); *see also Baker v. Bennett,* 644 So.2d 901 (Ala.1994) (holding that Alabama court did not have jurisdiction for garnishment purposes over judgment debtor's accounts with national securities firms, given evidence that debtor did not have any accounts in the state). Of course AAL's attempted garnishment here is more attenuated than the cases above because ING does not have any branches in Kentucky.

So a Kentucky court cannot legally enforce a non-wage garnishment served on out-of-state bank. Thus, AAL's attempt to garnish Mr. Wilson's ING bank account was not permitted by law. Therefore, AAL violated the FDCPA. AAL was attempting to collect a debt when it issued the non-wage garnishment on Mr. Wilson's ING bank account. But this action could not legally be taken and it was an attempt to collect an

-9-

amount permitted by law. AAL's violation of the FDCPA can be shown another way as well. In particular, Delaware law expressly prohibits the garnishment of Mr. Wilson's ING bank account.

### E.      Delaware Law Prohibits Garnishment of Mr. Wilson's ING Bank Account

Del. Code Ann. tit. 10, § 3502(b) provides:

> Banks, trust companies, savings institutions and loan
> associations, except only as to a wage attachment against
> the wages of an employee of the bank, trust company,
> savings institution or loan association, shall not be subject
> to the operations of the attachment laws of this State.

ING is a Delaware bank. (A copy of ING's garnishment answer is attached as an Exhibit to the Complaint, dkt. #1.). Delaware banks cannot be garnished under this statute. *Bank of Delaware v. Wilmington Housing Authority*, 352 A.2d 420, 422 (Del. Super. 1976). Thus Delaware law prohibits the garnishment of Mr. Wilson's ING bank account. The logical rejoinder would be that Kentucky law and not Delaware law applies here, but this is not so. This is because any right AAL has against ING is derivative of Mr. Wilson's rights against ING. Mr. Wilson's rights against ING in connection with his ING bank account are governed by his agreement with ING. This agreement expressly provides that the agreement is subject to and governed by Delaware law. So AAL's attempted garnishment of Mr. Wilson's ING bank account was likewise subject to and governed by Delaware. Therefore, Delaware law prohibits the garnishment of the bank account.

### i.      The Garnishor Stands in the Debtor's Shoes

In Kentucky,

> [t]he law is that garnishment proceedings serve only to
> subrogate the plaintiff therein to the rights of his debtor as
> against the garnishee, and that the plaintiff can enforce no
> right against the garnishee that his debtor could not
> enforce; it being the rule that "the right of the creditor
> against the garnishee cannot, by garnishment, rise higher
> than the right of the debtor against the garnishee," and that
> the decisive test is "to determine whether or not one is
> liable as garnishee is whether the principal debtor has a
> right of action against the garnishee."

*Metropolitan Life Ins. Co. v. Hightower*, 211 Ky. 36, 276 S.W. 1063, 1065 (1925)

This means that in seeking to garnish funds from Mr. Wilson's bank account,

AAL rights derive from Mr. Wilson's rights to the funds. Any claim that Mr. Wilson has

against ING in connection with his checking account is governed by and subject to the

terms of his ING checking account agreement. The ING agreement is available online at

http://home.ingdirect.com/terms_eo. That agreement provides in pertinent part:

> **COMPLIANCE WITH LAWS AND REGULATIONS** - Your
> Electric Orange is subject to both Federal law and the laws of the
> State of Delaware, as well as any operating circulars or clearing
> house rules that apply to us and the rules and regulations of our
> supervisory authorities (collectively, "Applicable Law").

and

> **20. GOVERNING LAW** - Delaware and federal law govern the
> Overdraft Line of Credit Agreement and your Overdraft Line of
> Credit, without regard to Delaware principles of conflicts of laws.
> If any term of the Overdraft Line of Credit Agreement is held
> invalid or unenforceable by a Court or administrative agency
> having proper jurisdiction, the remainder of the Overdraft Line of
> Credit Agreement shall remain in effect.

Consequently, because any claim Mr. Wilson has against AAL is subject to and

governed by Delaware law, the same is true for AAL when it stepped into Mr. Wilson's

-11-

shoes in attempting to garnish his ING bank account.  Delaware law expressly prohibits

AAL from garnishing Mr. Wilson's ING bank account. So once again we see that AAL

violated the FDCPA by attempting to collect a debt by taking that cannot be legally taken

and by trying to collect an amount from Mr. Wilson's ING bank account that is not

permitted by law.

## VI.    Conclusion and Relief Requested

For the reasons set forth above, the Court should DENY Asset Acceptance, LLC's

motion to dismiss.

Respectfully submitted,


James McKenzie
*Pedley & Gordinier, PLLC*
10600 Timberwood Circle
Suite 1
Louisville, KY 40223
Tel:    (502) 214-3120
Fax:    (502) 214-3121
jmckenzie@pedleylaw.com

James H. Lawson
*Lawson at Law, PLLC*
10600 Timberwood Circle
Suite 1
Louisville, KY 40223
Tel:    (502) 473-6525
Fax:    (502) 473-6561
james@kyclc.com

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served on the following via U.S. Mail, postage prepaid, on this 19th day of April, 2012 to:

Charlie Gordon
W. Anderson Woodford
22110 Greene Way
P.O. Box 20067
Louisville, KY 40250

James H. Lawson

-13-